UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DASHA CORNER, ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 06-10751** |
| | * | |
| **THE HOUSING AUTHORITY NEW ORLEANS, ET AL.** | * | **SECTION "L"** |

## ORDER & REASONS

On July 10, 2014, the Court held a show cause hearing, instructing Defendants to show cause why they should not be held in contempt for failing to comply with the consent decree. The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.    BACKGROUND**

On December 4, 2006, Plaintiffs Dasha Corner and Greater New Orleans Fair Housing Action Center ("GNOFHAC") filed the present lawsuit against Defendants The Housing Authority of New Orleans ("HANO") and HRI/River Garden for alleged violations of the Fair Housing Act.  (Rec. Doc. 1 at 1-2).

According to Plaintiffs, in 2000, St. Thomas Housing Development ("St. Thomas") was demolished and slated for redevelopment as "River Garden Apartments."  Administrative complaints were filed with the United States Department of Housing and Urban Development ("HUD") by former St. Thomas residents.  As a result, the parties (HUD, former residents, HANO, and the City of New Orleans) entered into an "Enforcement Agreement."  (Rec. Doc. 1 at 4).  The Enforcement Agreement stated that former residents of St. Thomas would get

1

preference for public housing units built during the redevelopment. Plaintiff Corner was a former resident of St. Thomas until she had to evacuate for Hurricane Katrina.

According to Plaintiffs in this case, HANO and HRI/River Garden breached the Enforcement Agreement when, after Hurricane Katrina, they rented the public housing units to employees of HANO and households who did not have preference and/or were ineligible for public housing. (Rec. Doc. 1 at 4).

In June 2007, GNOFHAC, HANO and HRI/River Garden entered into a Consent Decree, resolving the claims that Plaintiffs brought under the Fair Housing Act. On July 5, 2007, this Court approved the Consent Decree. On July 11, 2007, the Court dismissed the case. Under the terms of the consent decree, Hano and HRI/River Garden are required to construct:

1) CS-1 Rental – 296 total units, 122 unites of which are ACC[1] housing;
2) Elderly Rental – 57 affordable units for the eldery, 62 years or older
3) Homeownership – 73 total homes, 15 of which are for first time homebuyers at the affordable purchase price specified in the aforementioned Development Agreement.
4) Historic Buildings – 37 affordable units.
5) CS-2 Rental – 310 total units, including 60 ACC units and 64 affordable units.
6) 100 units of three-bedrooms and four-bedrooms of off-site rental housing units on lots that were acquired by HANO in 2004.

(Rec. Doc. 54 at 8-9).

## II.     PRESENT MOTION

---

[1] ACC is an acronym used by HUD to mean "annual contributions contract." This refers to a contract between HUD and a local public housing authority, like HANO, under which HUD agrees to pay an amount certain in any given year for the purpose of providing housing assistance to low and moderate income citizens.

### A.     GNOFHAC's Motion

On April 8, 2014, GNOFHAC filed a motion for order to show cause why Defendants should not be held in contempt for failure to comply with the Consent Decree. (Rec. Doc. 70). GNOFHAC claims that while HANO and HRI/River Garden have performed the other requirements of the Consent Decree, they have not yet begun construction of any of the required 100 units of three-bedrooms and four-bedrooms of off-site rental housing and they do not have a concrete plan for doing so.  Further, GNOFHAC claims that it recently learned that HANO sold or transferred several properties that were set aside for the off-site units.  GNOFHAC claims that this sale/transfer without prior authorization is a violation of the Consent Decree.  GNOFHAC claims that good faith negotiations, which are mandated by the Consent Decree, have failed and that Defendants should be subject to contempt sanctions and reasonable attorneys' fees. Accordingly, GNOFHAC asked this Court to order that Defendants show cause why they should not be held in contempt for failure to comply with the Consent Decree.

### B.     HANO's Opposition (Rec. Doc. 79)

HANO filed an opposition in which it claims that it has been unable to build the 100 off-sight units because it does not have the necessary funds.  HANO argues that civil contempt is inappropriate when, as here, the party does not have the ability to comply with the order. (Rec. Doc. 79 at 3) (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)). HANO points out that immediately after the Consent Decree was confirmed, it tried to comply with the terms of the Decree.  However, HANO's attempts were allegedly thwarted when the sub-contractor who it hired for the project was debarred.  HANO also claims that its funding has steadily decreased every year since 2010 and that, more recently, it has had to deal with Congressional sequestration and budget cuts. (Rec. Doc. 79 at 4-5).

HANO points out that its mission is "to provide and encourage the development of quality, affordable housing and the preservation of healthy, vibrant neighborhoods for the citizens of New Orleans in a manner that promotes self-sufficiency and economic opportunity." (Rec. Doc. 79 at 6).  HANO claims that it does not have the funds necessary to fulfill this mission in the manner that GNOFHAC seeks.

### C. HRI/River Garden's Opposition (Rec. Doc. 80)

HRI/River Garden filed an opposition in which it argues that it is not responsible for developing off-site rental units under the Consent Decree.  According to HRI/River Garden, it is a single-purpose entity with the sole purpose of owning Phase I development at the River Garden apartments.  HRI/River Garden claims that the Consent Decree incorporated the terms of the "Development Agreement," which provided that Historic Restoration Incorporated ("HRI") would serve as HANO's agent with respect to the off-site units.  (Rec. Doc. 80 at 5).  Disadvantaged business entities were to serve as developer.  HRI/River Garden argues that, as Agent, it could not develop the off-site units and cannot be held responsible for the principal's failure to perform.

### D. GNOFHAC's Reply (Rec. Doc. 81-2)

In response, GNOFHAC argues that Defendants have the burden of proving inability to comply with the Consent Decree and that they have not met this burden by simply stating that they have insufficient funds.  (Rec. Doc. 81-2 at 2).  GNOFHAC claims that construction of the off-site units requires a multiplicity of steps and funding sources, which Defendants have not pursued.  Specifically, GNOFHAC alleges that Defendants must first enter into a subcontract with a developer who can then pursue various financing and funding sources.  (Rec. Doc. 81-2 at 4).  GNOFHAC admits that Defendants' first contractor was debarred, but points out that the

Defendants have not done anything to try to secure a new one.  GNOFHAC argues that Defendants have not shown that they are *unable* to build the units, but instead that they are *unwilling* to try.  (Rec. Doc. 81-2 at 5).

GNOFHAC argues that the fact that HRI/River Garden is not the developer of the off-site properties does not relieve it of the responsibility under the Consent Decree, which they agreed to.  GNOFHAC argues that orders are binding on parties *and* their agents.  (Rec. Doc. 81-2 at 6).  Furthermore, GNOFHAC claims that HRI/River Garden was a party to the Decree and if it contested its authority, it should have raised that at the time the Decree was entered.

GNOFHAC asks the Court to order that the Defendants submit a development schedule with a timeframe for procurement of a subcontractor and the completion of development milestones.  (Rec. Doc. 81-2 at 6).

### E. HANO's Sur-Reply (Rec. Doc. 88)

Defendant HANO filed a sur-reply and attached a copy of its FY 2014 budget.  HANO reiterates that it does not have the funds to build additional housing.  HANO also provides an affidavit from its CFO, which summarizes the budgetary constraints.

### III. LAW AND ANALYSIS

The Fifth Circuit has explained that "[c]onsent decrees have elements of both contracts and judicial decrees.  A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 732 (5th Cir. 2004) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004)); *see also U.S. v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008) ("consent decrees are more than contracts.  They are enforceable judicial orders.").  "A party

may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987). "[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree." *Alcoa*, 533 F.3d at 286. "[D]istrict courts have wide discretion to enforce decrees and to implement remedies for decree violations." *Alcoa*, 533 F.3d at 286; *see also Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 272 (5th Cir. 1977) ("Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees.")

"The movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5$^{th}$Cir. 1987); *see also Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) ("In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence."). Once a violation of the order is demonstrated, the burden shifts to the violating party to "show either mitigating circumstances that might cause a district court to withhold the exercise of its contempt power, or a substantial compliance with the consent order." *Whitfield*, 832 F.2d at 914 (citing *Louisiana Educ. Ass'n v. Richland Parish School Bd.*, 421 F.Supp. 873, 977 (W.D. La. 1976), aff'd 585 F.2d 518 (5th Cir. 1977)).

The respondent can also defend by showing "a present inability to comply with the subpoena or order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (citing *U.S. v. Rylander*, 460 U.S. 752, 757 (1983)). "Where compliance is

impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *Rylander*, 460 U.S. at 757. The defendant has the burden of production when raising the defense of inability to comply. *Rylander*, 460 U.S. at 757; *see also Pierce v. Vision Investments, Inc.*, 779 F.2d 302, 304 (5th Cir. 1986) (holding that contempt judgment was available and remanding case to the district court for a hearing to determine the contemner's ability to comply with the consent order).

     **A.**     **The Consent Decree**

Section III of the Consent Decree, entitled "Affordable and ACC Units" (Rec. Doc. 54 at 7) states that "HANO and HRI/River Garden shall construct or have constructed . . . 100 units of three-bedrooms and four-bedrooms of off-site rental housing units on lots that were acquired by HANO in 2004." This Section also states that "HANO and HRI/River Garden, and any other assigned developer or any other selected or designated developer, shall develop, in accordance with the terms and conditions of that certain Development Agreement dated October 28, 1999, as amended" by subsequent amendments. (Rec. Doc. 54 at 7). The relevant portion of the Development Agreement states that "[w]ith respect to the Off-Site Development, HRI shall serve as an Agent of HANO. . . . As the Agent of HANO, HRI shall contract with one or more small disadvantaged businesses. . . ." (Rec. Doc. 80-2 at 71). Section 16.07 of the Development Agreement (as Amendment by the Third Amendment) is entitled "Off-Site Development" and provides that "HRI agrees, and is hereby obligated, to serve as the Agent of HANO for the Off-Site units. Execution of this Agreement by HANO shall constitute approval and notice to proceed to HRI. No competitive bid process shall be required in the selection by the Agent of HANO and any developer. As the Agent of HANO, HRI shall make every effort to include

women- and/or minority-owned businesses as developers. In addition, HRI, as the Agent of HANO, shall develop a selection process for the Off-Site developers, which process must be approved by the City's Director of Housing and the City Council." (Rec. Doc. 80-2 at 75). The Consent Decree also states that "[t]he Court in this action shall retain jurisdiction in this action for all purposes relating to the enforcement of this Consent Decree."

### B. Defendants' Non-compliance

The Defendants do not dispute that they entered into a Consent Decree with the Plaintiffs in this case. Further, the Defendants acknowledge that the Consent Decree calls for the construction of 100 off-site three-bedroom and four-bedroom rental housing units. The parties also agree that these units have not yet been constructed. Accordingly, the Court finds that the Plaintiffs have met their initial burden of showing that civil contempt is in order. *See Petroleos Mexicanos*, 826 F.2d at 401. The burden, therefore, shifts to the Defendants to show an inability to comply. The Court finds that the Defendants have been unable to meet this burden.

The evidence in the record indicates that a construction project of this magnitude requires multiple steps, procedures, and funding sources. HANO cannot prove an inability to comply with the Consent Decree by simply pointing to its constrained budget. HANO has put forth no evidence to suggest that it has tried to build the units or that it has taken affirmative steps toward the construction. HANO admits that it never hired a new subcontractor or developer after the first subcontractor was debarred in 2008. When asked what steps HANO has taken toward the construction of these units, HANO's counsel explained that it has been unsuccessfully searching for the funding sources and brainstorming ideas. However, as to specific funding sources, HANO was unable to put forth any evidence that it attempted to acquire funding and failed. For

instance, the St. Thomas Revitalization Plan provides a list of anticipated funding sources for off-site units. This list includes: low income housing tax credits, home funds, private equity, and community development block grants. Whether or not this Plan is applicable here, which HRI/River Garden contests, it is still suggestive of the types of funding sources that can be used in a construction project of this nature. HANO has put forth no evidence that it has unsuccessfully sought any of this funding. Nor has HANO hired a subcontractor or developer to assist in attaining funding. Seven years is too long for HANO to simply think about constructing the units. The time has come for HANO to put in place a development schedule with various timelines that this Court can monitor and enforce.

### B.     HRI/River Garden

HRI/River Gardens argues that it is an improper party in this proceeding. HRI/River Garden claims that it is a single purpose entity, which was created to own Phase I Development of that River Garden Apartments. Whether or not HRI/River Garden was created for a single purpose, it signed the Consent Decree and bound itself. As stated previously, the Consent Decree unambiguously states that HANO and HRI/River Garden will construct or have constructed the 100 units. If HRI/River Garden was unable to comply with this provision, it should have raised this issue before signing the Consent Decree. At oral argument, counsel for HRI/River Garden stated that HRI/River Garden is still a functional corporation. HRI/River Garden put forth no evidence regarding an inability to comply with the Consent Decree due to financial constraints. Accordingly, the Court finds that HRI/River Garden is in violation of the Consent Decree.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion is hereby **GRANTED.**

After hearing oral argument on this motion, the Court instructed the parties to meet and confer and submit a development schedule for the off-site housing units to the Court.  On August 8, 2014, the parties submitted the development schedule.  On that same day, the Court issued an Order establishing the proposed development schedule.

**IT IS FURTHER ORDERED** that the development schedule (Rec. Doc. 92) is hereby incorporated into this Order and Reasons.  The parties should inform the Court immediately if any problems arise, regarding the newly established development schedule, which require Court intervention.

At this time, the Plaintiff's motion for attorneys' fees is **DENIED**.  However, the Plaintiff retains the right to, at a later date, make a claim for attorneys' fees for all past work done in connection with this motion as well as all future work, in the event that the Defendants fail to perform their obligations as set forth in the development schedule.

New Orleans, Louisiana, this 9th day of August, 2014.

_____
UNITED STATES DISTRICT JUDGE